## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **PRISCILLA BATISTA,** | |
| **Plaintiff,** | **Civil No. 10-1953 (GAG)** |
| **v.** | |
| **COOPERATIVA DE VIVIENDA JARDINES DE SAN IGNACIO, et al.,** | |
| **Defendants.** | |

## OPINION AND ORDER

Priscilla Batista ("Plaintiff") brings suit against the Cooperativa de Vivienda Jardines de San Ignacio ("the Cooperativa") and past and present members of its board of directors, including Carmen Couvertier Marquez, Candido Cotto Hernandez, Maria Ramirez Lopez, Carlos Roman Espada, Cristina Diaz Atienzo, Catherine Rivera Calderon, Rosa Maldonado Gonzalez, and Santos Colon (collectively "Defendants"). Plaintiff alleges violations of the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, arising from acts of discrimination, retaliation, and failure to reasonably accommodate. Plaintiff requests temporary and permanent injunctive relief, a temporary restraining order "enjoining any and all attempts by [D]efendants to hold a hearing against [Plaintiff] in an attempt to collect market rent and other amounts not owed by [Plaintiff]," $350,000 in compensatory damages, $500,000 in punitive damages, and attorney's fees. (Docket No. 21 at 10-12.)

Defendants moved to dismiss the complaint for failure to state a claim and to summarily dismiss. (Docket Nos. 64-65.) Plaintiff responded. (Docket Nos. 73, 77.) For the following reasons, the court

Civil No. 10-1953 (GAG)

**GRANTS** Defendants' motion for summary judgment at Docket No. 65 and **MOOTS** Defendants'

motion to dismiss at Docket No. 64.[1]

## I.      Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a).  "An issue is

genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it

'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v.

City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the

non-moving party's case.  Celotex, 477 U.S. at 325.  "The movant must aver an absence of evidence

to support the nonmoving party's case.  The burden then shifts to the nonmovant to establish the

existence of at least one fact issue which is both genuine and material." Maldonado-Denis v.

Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).  The nonmovant may establish a fact is

genuinely in dispute by citing particular evidence in the record or showing that either the materials

cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse

party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).  If the

court finds that some genuine factual issue remains, the resolution of which could affect the outcome

---

[1] Prior to issuing the present ruling, the court held a settlement conference in order to give the parties an opportunity to resolve the controversies at bar.  (See Docket Nos. 82, 87.)

Civil No. 10-1953 (GAG)

of the case, then the court must deny summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences.  Id. at 255.  Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence.  Id.  Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation."  Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II.    Factual and procedural background

The Cooperativa owns and manages a housing cooperative of 514 residents.  (Docket No. 65-7 at 2-3.)  Certain U.S. Department of Housing and Urban Development ("HUD") and Federal Housing Administration ("FHA") regulations bind it because it leases apartments to recipients of Section 8 Loan Management Set Aside Housing Assistance Payment ("Section 8").  (Id. at 2.)  Section 8 provides housing subsidies for low-income tenants. 42 U.S.C. § 1437f (2012).  Plaintiff and approximately 23 or 24 other Cooperativa tenants qualified for and enjoyed benefits under the statute.  (Docket No. 76-10 at 109.)

Plaintiff suffers from mobility impairment due to osteoporosis and fibromyalgia that qualifies her as legally disabled.  (Docket No. 65-7 at 2.)  She also suffers from severe fatigue and depression, migraines, blood anemia, hypersensitivity to sound, and colon irritability.  (See generally Docket No. 67-1 at 5.)  Consequently, she qualifies as a member of a protected class under the Fair Housing Act.  Since

3

**Civil No. 10-1953 (GAG)**

1983, Plaintiff has resided in the same three-bedroom apartment at the Cooperativa.  (Docket No. 65-7 at 2.)  Her two children previously resided with her and moved out in 1997 and 2003.  (Id.; see also Docket No. 76 at 2-3.)  She claims she needs three bedrooms to accommodate her belongings and hobbies, such as a stationary bicycle and arts and crafts, which are necessary to ameliorate her many disabilities.  (See Docket No. 21 at 5; see also Docket No. 65-2 at 44-47.)

Defendants have a "policy and practice of accommodating disabled tenants," previously accommodating four tenants with parking spaces, five with modified bathrooms, and seven with support animals.  (Docket No. 65-7 at 6.)  Indeed, Defendant Couvertier testified that Defendants accommodated Plaintiff by providing her with a parking space in close proximity to the building because her records at the Cooperativa indicated she was disabled.  (Docket No. 76-10 at 33-34.)

The Puerto Rico Housing Finance Administration ("PRHFA") "conducted a management review of the Cooperativa" on October 4 and 5, 2007, observing that four units, including Plaintiff's, were over-housed.  (Docket No. 65-7 at 3; see also Docket No. 71-1 at 6 (stating, "[U]nit size was not appropriate for household composition in four of five cases evaluated[, including] Unit[] . . . 1714A.").)  Plaintiff admits she resides in Unit 1714A.  (Docket No. 21 at 2.)

On October 24, 2008, Defendants sent Plaintiff a letter stating, "Owner does not implement occupancy standards regarding size and number of bedrooms needed based on the number of people in the family," and elaborated that an over-housed member must transfer to the appropriate sized unit with continued Section 8 assistance or remain in the same unit and pay fair market value.  (Docket No. 65-7 at 3.)  Defendants also claim they wrote Plaintiff two letters in 2007 and 2008 informing Plaintiff of the availability of a two-bedroom apartment on the first floor of the Cooperativa.  (Id.)  Defendants

4

Civil No. 10-1953 (GAG)

subsequently wrote Plaintiff in November 2008 and February 2009 to inform her of the availability of a

two-bedroom apartment, and advised Plaintiff that "her continued stay in the unit through April 1, 2009,

would result in her having to pay market rent." (Id. at 4.)  Defendant neglected to include any of these

letters as submissions and Plaintiff does not expressly admit receiving the letters, but Plaintiff concedes

that she received notice of Defendants' intention to relocate her to the two-bedroom apartment.  (Docket

No. 76 at 7.)

Plaintiff responds that the Cooperativa "lacked adequate methods to implement required

management policies," and that "PRHFA cautioned [the] Cooperativa of several Section 8 members

(some 23 members) [who] were over-housed and/or being transferred, and were being properly advised

about applicable policies."  (Docket No. 76 at 6.)  Plaintiff avers that, in requesting her to relocate, the

Coopertiva neglected other considerations "as to particular exceptions or accommodations needed 'when

such accommodation may be necessary to afford a person with disabilities equal opportunity to use and

enjoy a dwelling unit and the public common areas."  (Id.)  Indeed, Defendants include a 2007 PRHFA

report stating, "Evidence that member Priscilla Batista . . . qualifies as handicap [sic] according to HUD

regulations is missing from file."  (Docket No. 71-1 at 7.)

On March 10, 2009, Plaintiff submitted another reasonable accommodation request to Defendants.

Plaintiff asked Defendants to allow her to stay in her three-bedroom apartment.  (Docket No. 65-7 at 4.)

Defendants sought assistance from PRHFA and HUD to resolve the matter on at least four occasions,

electing to table any increase in Plaintiff's rent until HUD provided guidance.  (Id. at 5.)  Plaintiff claims

Defendants failed to engage in any meaningful evaluation, analysis, comparison, investigation,

consultation, or exercise to make an informed decision regarding the reasonable accommodation request,

5

Civil No. 10-1953 (GAG)

instead only performing a noise level test near Plaintiff's suggested relocation and seeking assistance from

HUD and PRHFA.  (Docket No. 76 at 11-13.)

Plaintiff admits, however, that a PRHFA response to Defendants' request reads, "In this case your

administrative staff should follow the [Cooperativa's] own policy regarding over housed units if the

member receives [S]ection 8 subsidy.  The [Cooperativa] should offer a smaller unit to the member and

require paying the market rent if he/she refuses to transfer to another unit."  (Docket No. 65-7 at 5.)  The

letter also reads, "When the member requests a reasonable accommodation for medical conditions, the

Board of Directors and administrative staff must determine the eligibility of each applicant on a case by

case basis.  Member must provide all documents necessary to prove his/her eligibility."  (Id.)

The parties dispute whether Plaintiff submitted medical documentation substantiating her

accommodation request.  Plaintiff contends that Defendants never "asked Plaintiff for the medical

documentation that supports her request for reasonable accommodation, much less for an authorization

from Plaintiff to have access to her medical records pursuant to [the Health Insurance Portability and

Accountability Act of 1996 ("HIPAA")]," though she admits HUD "received medical documentation and

interviewed Plaintiff's physicians who confirmed her need of the three-bedroom unit" before adjudicating

Plaintiff's claim at the administrative level.  (See Docket Nos. 65-7 at 6; 76 at 16.)

Defendants claim that Plaintiff's "participation in [S]ection 8 [] was canceled in order to comply

with the Occupancy Requirements of Subsidized Multifamily Housing Programs of the Department of

Housing and Urban Development," requirements which ostensibly dictated that Plaintiff either move into

new, smaller accommodations or pay fair market value for her three-bedroom apartment.  (Docket No.

65-7 at 2.)

6

Civil No. 10-1953 (GAG)

Plaintiff alleges that "on June 14, 2011, during a meeting with Ms. Yolanda Perez (Project Manager for [the Cooperativa] at HUD's Puerto Rico local office), that Plaintiff had not been cancelled and that the [PRHFA] was still issuing the corresponding [S]ection 8 vouchers and sending them to [the Cooperativa] for" Plaintiff's benefit.  (Docket No. 76 at 3.)  Plaintiff buttresses her assertion with letters she received from the Cooperativa after January 1, 2011, requesting her to pick up Section 8 checks from the Cooperativa's administrative office.  (See Docket Nos. 76-4-76-6.)  Although these letters do not specifically reference Section 8, they request Plaintiff to come to the administrative office to pick up a "negative rent" check, which Plaintiff identifies as her Section 8 benefits.  (Id.)  However, Defendant Couvertier stated that Plaintiff received her last Section 8 benefit checks in January 2012.  (Docket No. 76-10 at 99, 110.)  Couvertier claims she filled out and dispersed the Section 8 checks for the Cooperativa during the relevant timeframe and that Plaintiff stopped receiving them in February 2012.  (Id.)  Plaintiff states she stopped receiving the benefits in January 2011.  (Docket No. 76-1 at 23.)  Regardless, the parties clarified that Plaintiff no longer receives Section 8 benefits during a settlement conference on May 6, 2013.

Defendants also respond to Plaintiff's charges by citing their notification to "23 tenants that they had to move to a smaller unit . . . [and that o]ne tenant was reasonably accommodated by being allowed to stay in the unit because her bathroom in her unit was changed from a bathtub to a shower based on her disability."  (Docket No. 65-7 at 6.)  Plaintiff does not dispute this; rather, she claims that Defendants breached their obligation to consider her specific disabilities when determining whether to grant her accommodation request.  (Docket No. 76 at 15-16.)  Defendant Couvertier testified that Defendants did not specifically account for Plaintiff's emotional condition, osteoporosis, fibromyalgia, and migraines

7

Civil No. 10-1953 (GAG)

in the study; instead, they merely relied on the HUD report.  (Docket No. 76-10 at 91.)

Around the same time, HUD resolved a separate claim Plaintiff brought against Defendants regarding another purported instance of Defendants' failure to accommodate Plaintiff.  Defendants sought to create a more sanitary environment by closing garbage depositories on each floor of the Cooperativa, but they neglected to give Plaintiff a key to the garbage depository on her floor.  Taking out the garbage beyond her own floor posed an undue hardship on Plaintiff because of her disability.  Plaintiff requested a key to the garbage room on her floor multiple times, Defendants failed to accommodate her, and a HUD administrative law judge ("ALJ") sanctioned the Cooperativa.  (See generally Docket No. 68-1.)

The ALJ required Defendants to give Plaintiff a key to the depository, pay her $10,000, write her an apology note, and "[r]emove any and all blemishes, sanctions, etc, *arising out of this case*, from Complainant-Intervenor's record, including any outstanding fees and the revocation of her voting privileges."  (Id. at 3) (emphasis added).  The wording of this provision indicates that the ALJ mandated removal of the blemishes and sanctions pertaining only to Defendants' failure to provide access to the depository.

On April 12, 2010, Plaintiff filed another complaint with HUD alleging the Cooperativa violated the Fair Housing Act for failure to reasonably accommodate and other retaliatory actions.  (Docket No. 65-7 at 6-7.)  HUD investigated the complaint and issued a Determination of No Reasonable Cause in Case Number 02-10-0495-8.  (Id.; see also Docket No. 67-1 at 6-7 (finding no violation of Title VIII of the Civil Rights Act of 1968, as amended).)  Plaintiff filed this suit on October 4, 2010.  (See Docket No. 2.)  Plaintiff alleges Defendants discriminated against her by 1) instituting multiple claims against her; 2) attempting to collect amounts not owed by her; 3) denying her rights to vote in assemblies; 4)

8

Civil No. 10-1953 (GAG)

attempting to prevent visitors from entering the premises; 5) breaching applicable consent and/or conciliation settlement agreements; 6) continuously threatening to evict her, and; 7) attempting to terminate her Section 8 benefits.  (See Docket No. 76 at 4-5, 15-16.)

## III.    Discussion

This case arises under the Fair Housing Amendments Act ("FHAA").  "The FHAA prohibits discriminatory housing practices based on a person's handicap," and "outlaws discrimination 'in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap.'"  Astralis Condo. Assoc. v. Velez-Aviles, 620 F.3d 62, 66 (1st Cir. 2010) (internal citations omitted).  "Discrimination includes a 'refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford handicapped persons equal opportunity to use and enjoy a dwelling.'"  Id. (internal citations omitted).

The FHAA consists of three types of claims for perceived discrimination: disparate treatment, disparate impact, and failure to make reasonable accommodations.  See id.  Plaintiff alleges several instances of discrimination for failure to reasonably accommodate, and, although Plaintiff does not provide any legal arguments substantiating disparate treatment and retaliation claims, the court briefly addresses each in an abundance of caution.

### A.      Failure to Reasonably Accommodate

The First Circuit outlined a three-step process to assess FHAA reasonable accommodation claims. See id.  First, "a claimant must show that [s]he is handicapped within the [FHAA] and that the party charged knew or should reasonably have known of [her] handicap."  Id. (citations omitted).  Second, the

9

Civil No. 10-1953 (GAG)

"claimant must show that [s]he requested a particular accommodation that is both reasonable and necessary to allow [her] an equal opportunity to use and enjoy the housing in question." Id. Lastly, "the claimant must show that the party charged refused to make the requested accommodation." Astralis Condo. Assoc., 620 F.3d at 66. The parties stipulate that Plaintiff satisfies the first and third prongs. The matter thus turns on whether Plaintiff proposed a reasonable and necessary accommodation. The Astralis court noted, "There is not much case law under the FHAA in this circuit." Id. The court, therefore, turns to other circuits for guidance on the facts that arise in this case.

A defendant must "incur reasonable costs and take modest, affirmative steps to accommodate the handicapped as long as the accommodations sought 'do not pose an undue hardship or a substantial burden.'" Taylor v. Harbour Pointe Homeowners Assoc., 690 F.3d 44, 49 (2d Cir. 2012) (quoting Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 333 (2d Cir. 1995)); see also Sch. Bd. of Nassau Cty. v. Arline, 480 U.S. 273, 288 n.17 (1987) (holding undue hardship includes undue financial burden under Rehabilitation Act). Plaintiff was required to give Defendants an opportunity to accommodate her, and Defendants must have "had an idea of what accommodation [Plaintiff] sought before . . . incurring liability for failing affirmatively to grant a reasonable accommodation." Id. (citing Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 578 (2nd Cir. 2003)).

Plaintiff alleges she needed to remain in her three-bedroom apartment to store her stationary bicycle and arts and crafts because she used them to improve her health. She even includes a doctor's diagnosis and recommendation to prove it. (See Docket No. 80-8.) Defendants allegedly discriminated against Plaintiff by requiring her to move to a smaller apartment or pay fair market value for the three-bedroom apartment. In support of her charge, Plaintiff claims that Defendants failed to perform a

10

**Civil No. 10-1953 (GAG)**

thorough investigation to adequately understand the underlying rationale for Plaintiff's accommodation request.  The PRHFA determined that Plaintiff no longer qualified for Section 8 benefits after her daughters moved out and directed the Cooperativa to either require Plaintiff to move to a smaller apartment and continue receiving Section 8 subsidies or remain in the three-bedroom apartment and pay fair market value.  Plaintiff admits the PRHFA assessed her ailments and interviewed her physicians before deeming her a tenant of an over-housed unit subject to loss of Section 8 benefits.  Defendants relied on this report in discontinuing her benefits and denying Plaintiff's request to remain in her apartment at a reduced price.  The relevant inquiry is thus whether Plaintiff may burden Defendants with the cost of the forfeited subsidies to reasonably accommodate her.  The answer is no.

An accommodation request is unreasonable if it puts a petitioner at a financial advantage (thereby placing a defendant at a disadvantage) rather than providing an equal opportunity.  See Bryant Woods Inn v. Howard Cty., 124 F.3d 597, 605 (4th Cir. 1997).  In Bryant Woods, the Fourth Circuit held that a defendant is not obligated to provide benefits to an individual with a disability when the benefits create a financial advantage unrelated to the individual's ameliorative efforts.  Id.  Bryant Woods differs from this case because Plaintiff clearly grounds her request in the ameliorative effects of her arts and crafts and stationary bicycling.  Bryant Woods instructs the court, however, because Plaintiff requests financial advantage based on her economic status, not an equal opportunity based on her disability.

Plaintiff qualified for Section 8 benefits because she fell within the requisite income bracket, a qualification blind to an individual's disability status.  Plaintiff qualifies for a reasonable accommodation because she is disabled.  Nothing in the FHAA supports the notion that forfeiture of the former imposes an additional financial burden on a landlord accommodating the latter.  Such rationale would permit a

**Civil No. 10-1953 (GAG)**

disabled Section 8 recipient who earns in excess of Section 8's eligible income bracket, thereby losing

the benefit, to remain in her apartment at the subsidized rate simply because of his disability. This cannot

be the purpose of the FHAA's reasonable accommodation requirement.

    Plaintiff's accommodation request would force Defendants to subsidize her rental fee because she

no longer qualifies for Section 8 benefits in her current apartment. But no tenant, disabled or otherwise,

would be allowed to remain in an apartment without paying fair market value or a contractually agreed-

upon fee. Plaintiff seeks to gain an *advantage* because of her disability, not a placement on equal footing

with non-disabled persons.[2] Section 8 subsidies do not hinge on remedial schemes under the FHAA, the

ADA, or the Rehabilitation Act. Conversely, revocation of Section 8 benefits does not trigger a duty on

a landlord to bear the financial burden of the difference between a tenant's subsidized rent and the fair

market value, regardless of the tenant's disability status.

    The Second Circuit found it "fundamental that the law addresses the accommodation of

handicaps, not the alleviation of economic disadvantages that may be correlated with having handicaps."

Salute v. Statford Green Garden Apts., 136 F.3d 293, 302 (2d Cir. 1998). The court held:

> Plaintiff[] seek[s] to use this statute to remedy economic discrimination of
> a kind that is practiced without regard to handicap. The "opportunity to
> use and enjoy" language of the FHAA reinforces the ability of people with
> handicaps to have the same opportunity as similarly situated persons who
> have no evident handicaps. What stands between th[is] [P]laintiff[] and
> the apartment[] . . . is a shortage of money, and nothing else. In this
> respect, impecunious people with disabilities stand on the same footing as
> everyone else. Thus, the accommodation sought by [P]laintiff[] is not
> "necessary" to afford handicapped persons "equal opportunity" to use and
> enjoy a dwelling.

---

    [2] Although not noted in the minutes of the settlement conference, attorneys for the parties
stated that rent in the Cooperativa three-bedroom apartment is $359 a month.

Civil No. 10-1953 (GAG)

Id.  The Cooperativa is willing to accommodate Plaintiff by allowing her to remain in her apartment. Plaintiff wants the Cooperativa to incur the difference in cost between the fair market value and the subsidized price of the three-bedroom apartment.   This request is purely economic and is thus unnecessary.   It arises because of Plaintiff's lost Section 8 benefits and not because of Plaintiff's disabilities.

### B.        Disparate Treatment and Retaliation

Plaintiff's complaint and reply to Defendants' motion for summary judgment also allege, without legal support and with minimal factual background, disparate treatment and retaliation.   Nowhere does Plaintiff use the phrase "disparate treatment;" however, she classifies Defendants' actions as discriminatory or retaliatory.  Plaintiff also claims Defendants retaliated against her for bringing previous claims against the Cooperativa, and by denying her reasonable accommodation request and imposing standard fees.

#### 1.        Disparate Treatment

Plaintiff alleges Defendants discriminated against her by 1) instituting multiple claims against her; 2) attempting to collect amounts not owed by her; 3) denying her rights to vote in assemblies; 4) attempting to prevent visitors from entering the premises; 5) breaching applicable consent and/or conciliation settlement agreements; 6) continuously threatening to evict her, and; 7) attempting to terminate her Section 8 benefits.  (See Docket No. 76 at 4-5, 15-16.)

The record completely lacks any foundation for a disparate treatment claim.  The Third Circuit succinctly discussed how a plaintiff must allege that a defendant discriminated against her on the basis of her disability.

Civil No. 10-1953 (GAG)

> Generally, to prevail on a disparate treatment claim, a plaintiff must
> demonstrate that some discriminatory purpose was a motivating factor
> behind the challenged action.  The discriminatory purpose need not be
> malicious or invidious, nor need it figure in solely, primarily, or even
> predominantly into the motivation behind the challenged action . . . . [I]t
> is not necessary to show an evil or hostile motive.  It is a violation of the
> FHAA to discriminate even if the motive was benign or paternalistic.  The
> plaintiff is only required to show that a protected characteristic played a
> role in the defendant's decision to treat her differently.

Comm. Servs., Inc. v. Wind Gap Mun. Auth., 421 F.3d 170, 177 (3d Cir. 2005) (citing cases) (internal citations omitted) (internal quotation marks omitted).  Plaintiff does not clear this hurdle by her own admission and failure to proffer sufficient evidence.  Nothing in her complaint, the record, or the opposition to the summary judgment motion reveals disability-based discrimination.  Her disparate treatment claim, like her reasonable accommodation claim, traces its roots to *economic* discrimination.  Plaintiff herself states, "Defendants['] *true intent* was to eliminate Section 8 beneficiaries from [the Cooperativa]."  (Docket No. 76 at 20) (emphasis added).

The 1) institutional claims against her, 2) attempt to collect amounts not owed by her, 3) denial of a right to vote in assemblies, 6) threats to evict her, and 7) attempts to eliminate her Section 8 benefits all arose from a dispute based on economic hardship.  Plaintiff failed to pay rent and fees associated with living in the Cooperativa, the Cooperativa had to charge her fair market value based on the PRHFA's report, state trial and appellate courts ruled against Plaintiff for the monetary relief requested, and Plaintiff likely misconstrued Defendants' consent decree with HUD, believing she would inexplicably be exempt from fees unrelated to the garbage depository matter despite language expressly stating the contrary.  (See Docket Nos. 65-2 at 36-37; 68-1 at 3; 71-1.)   Indeed, Plaintiff admits, "At the time the parties reached settlement in [the depository access matter] . . . Defendants and I were at odds as to some fees, *unrelated*

14

**Civil No. 10-1953 (GAG)**

*to the issues* [*arising from the matter*], that the [Cooperativa] claimed were owed by me . . . ." (Docket No. 76-1 at 8) (emphasis added).   None of these claims find their origins in disability-based discrimination; rather, they arise because Plaintiff is impecunious, unsuccessful in her reasonable accommodation request, and without her Section 8 benefits.   Claims (1)-(3) and (6)-(7) are thus insufficient to entitle Plaintiff to relief under a disparate treatment theory.

Claim (4) constitutes a potentially viable claim for either disparate treatment or failure to reasonably accommodate.   Plaintiff alleges Defendants attempted to prevent visitors from entering the premises.   If the purpose of these visits was to ameliorate the effects of Plaintiff's disabilities, Defendants could be liable.   But Plaintiff neglects to elaborate.   She fails to detail how the visitors were prevented from entry, why they visited, who they were, and why such prevention constitutes discrimination.   The court bears no duty to fill in factual gaps to create a legal argument.   See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).   Therefore, claim (4) is also insufficient.   All of these claims are **DISMISSED.**

## 2.    Retaliation

Claim (5) states that Defendants retaliated against Plaintiff by breaching the consent order concerning garbage depository access.   (See generally Docket No. 68-1.)   Indeed, Plaintiff may plausibly assert that each of the seven claims constitutes a retaliatory breach of the consent order arising from the depository matter.   But this court is not the proper one to adjudicate the matter.   A HUD ALJ entered the consent order.   (See id. at 4.)   Therefore, the First Circuit Court of Appeals, pursuant to 42 U.S.C. § 3612(m), has jurisdiction to enforce the order.   (See id.)   Plaintiff's retaliation claim is thus **DISMISSED without prejudice**.

## IV.    CONCLUSION

**Civil No. 10-1953 (GAG)**

For the reasons discussed above, Defendants' motion for summary judgment at Docket No. 65

is **GRANTED** and the motion to dismiss at Docket No. 64 is **MOOT**.  This case is **DISMISSED**.


    **SO ORDERED.**

In San Juan, Puerto Rico this 15th day of May, 2013.


                                  S/ Gustavo A. Gelpí
                                  GUSTAVO A. GELPI
                         United States District Judge